STATE *EX REL.* FARR v. YOUNG.

1. MANDAMUS—APPEAL—SUPERSEDEAS.—Obeying writ of mandamus does not deprive the party obeying of the right of appeal.

1. MUNICIPALITY—SEWERAGE BONDS—SEWERAGE COMMISSION.—COM. OF PUBLIC WORKS elected by a town council under the act of 1896 have no right to the possession and control of sewerage bonds or the proceeds thereof as against the town council, such town council being about to proceed under the act of 1902 to elect a sewerage commission.

Before TOWNSEND, J., Union, July, 1902.    Reversed.

Proceeding by petition and rule for mandamus by F. M. Farr *et al.*, as board of commissioners of public works of Union, against Macbeth Young, as mayor, and the aldermen and clerk and treasurer of the town. From Circuit decree, respondents appeal.

*Mr. J. Clough Wallace,* for appellants, cites: *Act of 1902 repeals previous acts:* 62 S. C., 64; 56 S. C., 401; 64 Miss., 543; 34 S. C., 199.

*Messrs. Munro & Sanders,* contra, cite: *Judgment having been complied with, there is now nothing to appeal from:* 35 S. C., 598, 603; 15 S. C., 372; 6 Rich., 150; 17 Wall., 607. *All these acts should be construed together:* 48 S. C., 402; 35 S. C., 245; Enlich on Int. of St., secs. 43-45. *Constitutionality of act cannot be considered because not raised below:* 62 S. C., 293.

April 20, 1903. The opinion of the Court was delivered by

MR. JUSTICE GARY. *Statement of facts.*—The facts are thus set out in the decree of his Honor, the Circuit Judge: "This is a petition on the part of the petitioners asking that a writ of mandamus do issue, commanding and requiring the respondents to deliver and turn over to the petitioners certain moneys, which it is alleged is in the hands of the respondents, arising from the assessment, levying and collecting of taxes in the town of Union for the purpose of creating a sinking fund for the payment of bonds which the town of Union issued for the purpose of erecting, enlarging and operating its water works and electric plants, and also certain moneys which was received by the respondents from the sale of certain bonds, which were issued and sold by the town of Union for the purpose of erecting and constructing a system of sewerage in the said town. It is admitted that the petitioners are the duly elected board of commissioners of public works for the town of Union, and that the respondents are the duly elected intendant, aldermen and clerk and treasurer of said town. It is further admitted that the respondents did assess, levy and collect certain taxes, amounting in all to the sum of $1,950, for the purpose of creating a sinking fund in order to retire and pay the bonds which the town of Union had issued for the purpose of

erecting, operating and enlarging its water works and electric light plants, and that under the act of the legislature of this State, said sinking fund ought to have been turned over and delivered to the petitioners as board of commissioners of public works. It is also admitted that on the 23d of August, 1900, an election was held for the purpose of authorizing the issuing of $35,000 in bonds of the town of Union, to be used in constructing a system of sewerage in said town, and that a majority of the qualified electors voted in favor of the issuing of these bonds. It is further admitted that on the 3d of September, 1900, the town council of said town, by an ordinance duly passed, authorized the issuing of these bonds; and that on April 15, 1902, an agreement was made for the sale thereof, and that said bonds were received by the respondents herein on May 9, 1902, and were then signed and deposited in Nicholson's Bank, in said town; and that on May 27, 1902, a credit for the purchase money thereof, amounting to $35,391.85, was placed to the credit of the respondents herein, as mayor and aldermen of the said town. The respondents, in their return, claim that the writ of mandamus ought not to issue, requiring them to deliver to the petitioners any of the aforesaid moneys, for the reason, as they say, that all sums arising from the levying and collecting of taxes for the purpose of creating a sinking fund has been turned over by them to what is called a sinking fund commission, elected by the town council, and that the same has been invested in building and loan stock, and is not within their control. They further claim that the moneys arising from the sale of the bonds issued for the purpose of constructing a system of sewerage is lawfully in their hands and under their control, and that there is no authority of law for delivering the same to the petitioners herein. I cannot concur in this view. The act of the General Assembly, approved the 2d of March, 1896, creates the board of commissioners of public works, and expressly provides, that bonds issued under this act shall be turned over to this board of commissioners. By

the act of the General Assembly, approved the 11th of February, 1897, and by an act approved the 2d of March, 1897, municipalities were authorized to issue bonds, among other things, for the purpose of establishing or enlarging a sewerage system or plant. Nothing is said in these two last acts as to who is to control and possess these bonds; but by an act of the legislature of this State, approved March 5, 1897, amending the first section of the act of the General Assembly, approved the 2d of March, 1896, authority is also given to cities and towns to issue bonds under certain conditions therein expressed for the purpose of erecting or constructing a sewerage system, and in this act it provides that when said bonds shall be issued, they shall be turned over to the board of commissioners of public works of the city or town so issuing them. These three last acts were all passed at the same session of the legislature, and must be construed together so as to arrive at what was the intention of the law-making power of the State. So construing them, I must hold that when the bonds in question were so voted, ordered to be issued, and issued, it was the legal duty of the authorities of the town or city issuing them to turn them over to the board of commissioners of public works. This being so, I hold as matter of law, that the petitioners herein are entitled in their official capacity to the custody of the funds, which have been created as a sinking fund, and to the bonds issued for the purpose of constructing a sewerage system in the town of Union, or to the proceeds thereof, if said bonds are not in the custody and control of the respondents. It is, therefore, ordered, adjudged and decreed, that the respondents do forthwith turn over and deliver to the petitioners all moneys in their hands, or in the hands of any of their agents, belonging to the sinking fund, created for the purpose of retiring the water works and electric light plant bonds, which have been issued by this town, and also that they turn over and deliver to the petitioners herein the proceeds arising from the sale of the bonds, which have been issued for the purpose of creating a system of sewerage; and that a

writ of mandamus do issue from this Court, requiring them to comply with the terms of this order."

The defendants appealed from said order on exceptions assigning error as follows:

"1. In not holding that the act of March 2d, 1896, and the amendments thereof, did not provide and require that any. bonds 'voted for' and 'authorized' thereunder should be turned over to the board of commissioners of public works created by it, and that any bonds for providing a sewerage system, 'issued' under any subsequent independent general act of the General Assembly, dealing fully with the whole subject, should be held, and the proceeds disbursed by the persons empowered by it to handle and control said bonds, disburse the proceeds and construct and maintain the sewerage system; and that under the provisions of the act of February 27th, 1902 (23d Stat., p. 1040), petitioners were not entitled to the bonds in dispute herein or the proceeds thereof.

"2. In not holding that the sewerage bonds in this case were not 'issued' under the act of March 2d, 1896, but under the act of February 27th, 1902, and that petitioners had no right to the sewerage bonds issued in this case on May 9th, 1902, or the proceeds thereof, and had no power under any of the acts of the General Assembly to disburse the proceeds, or to contract for, construct or maintain a system of sewerage.

"3. In overlooking and not considering the act of February 27th, 1902, or its effect upon the act of March 2d, 1896, so far as the same relates to a system of sewerage.

"4. In not holding that the act of February 27th, 1902, repealed necessarily any and all the provisions of the act of March 2d, 1896, relating to sewerage, inconsistent therewith, and that if there is any provision in said act giving petitioners control of the bonds issued for sewerage and the proceeds thereof, the same is inconsistent and irreconcilable with the act of February 27th, 1902, and is repealed by necessary implication.

"5. In not holding that even if the act of March 2d, 1896, and amendatory acts, made petitioners the proper depository of bonds for sewerage when 'issued,' still said act does not give them any power or right to contract for or construct said sewerage system or disburse the proceeds of said bonds; and that after the sale of said bonds by the town council, as in this case, that petitioners had no right to the proceeds thereof in the hands of the town council.

"6. In not holding that the act of March 2d, 1896, is unconstitutional, in that it authorizes an election upon the petition signed by a majority of the freehold voters, instead of a majority of the freeholders, or at least the section authorizing the issuing of the bonds and their delivery to petitioners, and that the bonds will be presimed to have been authorized under the act of March 9th, 1896, and the amendment of February 11th, 1897, and that under these acts petitioners have no right to the fund arising from the sewerage bonds.

"7. In not holding that the words 'or sewerage,' wherever they occur in section 1 of the amended act, as declared, it shall read, after amendment, are an illegal and unwarranted interpolation, and are not a legal amendment of and part of the act of March 2d, 1896, and gave petitioners no right to the sewerage bonds or the proceeds thereof.

"8. In not holding that the act of February 27th, 1902, covered the whole subject-matter of sewerage bonds, their management and control, and the construction and maintenance of sewerage systems in towns and cities; and under said act the petitioners have no right to the proceeds of the sewerage bonds in question.

"9. In decreeing that the petitioners are entitled to the sewerage bond fund, and ordering the same turned over to them, and in authorizing the issuing of a peremptory writ of mandamus to enforce compliance therewith."

The exception raising the constitutionality of the act of March 5th, 1897, was abandoned.

*Opinion.*—It is contended by the respondents that all

questions raised by this appeal are now purely speculative, inasmuch as the appellants, the town council of the town of Union, have complied with the order of the Circuit Court, and turned over to the respondents, the board of commissioners of public works, all moneys belonging to the sinking fund or arising from the sale of the sewerage bonds, and that the appeal should, therefore, be dismissed. The appellants had the right to appeal from the order of the Circuit Court allowing the writ of mandamus to issue. *Pinckney* v. *Jones,* 2 Strob., 250; *Matthews* v. *Nance,* 49 S. C., 322, 27 S. E., 408. The appeal, however, did not act as *supersedeas. Pinckney* v. *Jones, supra.* The compliance by the appellants with the writ of mandamus was not voluntary but compulsory, as they would have subjected themselves to proceedings in contempt if they had refused to obey the writ. To sustain the contention of the respondents would practically deny to the appellants the right of appeal.

The vital question in this case is whether the Circuit Court erred in its rulings that the sewerage bonds should be turned over to the board of commissioners of public works. In paragraph 12 of the petition it is alleged, "That your petitioners are informed and believe that the respondents herein, contrary to the act of the General Assembly of this State, are about to undertake to erect, construct and operate a system of sewerage in said town, and in so doing are proceeding beyond the authority given them in said act." * * * In the return to the rule to show cause the defendants say: "Answering paragraph numbered 12 of the petition, these respondents allege that at the next regular meeting of the town council of the town of Union, to be held on Monday night next, the 14th inst., these respondents intend to take initiatory steps to establish a sewerage system for the town of Union and to elect a sewerage commission in accordance with the provisions of the act of the General Assembly of this State, approved the 27th day of February, 1902."

Sections 1 and 2 of an act entitled "An act to empower

municipal corporations to erect and enlarge their sewer systems by commissions, and to prescribe their powers and duties," approved the 27th day of February, 1902, are as follows (23 Stat.) : "Section 1. That any municipal corporation in this State which is about to enlarge, extend or establish a system of sewerage therein may by its mayor or aldermen, or intendant and wardens, or city or town councils, elect five or seven of its citizens, who shall be freeholders therein, as a sewerage commission, which shall be known and designated as the sewerage commission of such municipal corporation, who shall continue as such for a term of two years and until their successors are elected, or until the enlarging, extending or establishment of its system of sewerage is fully completed as contemplated under the laws and ordinances providing therefor : *Provided,* That not more than three persons so elected as members of said commission shall be members of the body electing such commission. Any vacancy occurring in said commission shall be filled by election as hereinbefore provided ; and any member thereof may be removed for cause by any such city or town council. The members of such commission before entering upon their duties shall take the same oaths required of members of the body electing them.

"Sec. 2. It shall be the duty of such sewerage commission, subject to the approval of such city or town council, to advertise for bids for at least thirty days in two or more newspapers for the work to be done, for material to be used therein, with the right to reject any and all bids, and to enter into contracts with the lowest responsible bidders thereon, and to secure competent persons, if deemed advisable, to superintend the construction thereof, and counsel and advise in matters relating thereto. Such commission shall have the construction of the system of sewerage in charge, and shall organize by electing one of its members as chairman thereof and a secretary, which may be the same person, as a clerk of such city or town council. A permanent record shall be made and kept by the said commission of all its proceedings,

contracts and other matters done and performed by it, including an accurate plan of the work done, showing the situation of the sewerage pipes, man-holes, water-flushes and all other things relating thereto that should be shown. And such records shall be open at all times to the inspection of any citizen of such corporation and to the city or town council thereof, and shall be turned over to such city or town council as a permanent record thereof with all convenient speed on the completion of its work. No such sewerage commission shall expend more money in the enlarging, extending or establishing such system of sewerage than has been appropriated therefor according to law; and all payments for material furnished and work performed shall be made by the treasurer of such city or town council on warrants issued by such commission and approved by such city or town council. No member of any such commission shall be permitted to enter into any contract with such commission for furnishing materials or for the construction of any of the work of such sewerage system."

By this act the town council has the *power* to elect a sewerage commission. The record shows that the town council is desirous of exercising this power. The second section of the act contains the permission that "no such sewerage commission shall expend more money in the enlarging, extending or establishing such system of sewerage than has been appropriated therefor, according to law; and all payments for material furnished and work performed shall be made by the treasurer of such city or town council on warrants issued by such commission and approved by such city or town council." This and the other provisions of the act are wholly inconsistent with the idea that the board of commissioners of public works should have the control and management of the sewerage bonds.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed and the petition dismissed.